IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:19-cv-201

RUBY DIANNE YOUNG, Executrix of the
Estate of LARRY SCOTT YOUNG,

                      Plaintiff,

v.                                        NOTICE OF REMOVAL

CHARLOTTE-MECKLENBURG
BOARD OF EDUCATION,

                      Defendant.

**EXHIBIT A – SUMMONS AND COMPLAINT**

| STATE OF NORTH CAROLINA | File No. 18 CVS 23578 |
|---|---|
| MECKLENBURG County | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division |

| Name Of Plaintiff | |
|---|---|
| Ruby Dianne Young, Executrix of the Estate of Larry Scott Young | **CIVIL SUMMONS**<br>☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| Address | |
| City, State, Zip | |
| **VERSUS** | |
| Name Of Defendant(s) | G.S. 1A-1, Rules 3 and 4 |
| Charlotte-Mecklenburg Board of Education | Date Original Summons Issued |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Charlotte-Mecklenburg Board of Education<br>c/o Dr. Clayton M. Wilcox, Superintendent<br>600 East Fourth Street<br>Charlotte, NC 28202 | |

⚠ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!

Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea Inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| S. Luke Largess<br>Tin, Fulton, Walker & Owen, PLLC<br>301 East Park Avenue<br>Charlotte, NC 28203 | 12-21-18 | 11:45 ☒ AM ☐ PM |
| | Signature: Emily J. Simpson | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| STATE OF NORTH CAROLINA | File No. 18-CVS-23578 |
|---|---|
| MECKLENBURG County | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division |

| Name Of Plaintiff | |
|---|---|
| Ruby Dianne Young, Executrix of the Estate of Larry Scott Young | |
| Address | **CIVIL SUMMONS**<br>☒ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |
| City, State, Zip | |

**VERSUS**

| Name Of Defendant(s) | G.S. 1A-1, Rules 3 and 4 |
|---|---|
| Charlotte-Mecklenburg Board of Education | Date Original Summons Issued<br>12/21/2018 |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Charlotte-Mecklenburg Board of Education<br>c/o Dr. Clayton M. Wilcox, Superintendent<br>600 East Fourth Street<br>Charlotte, NC 28202 | |

⚠ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!

Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea Inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued 1/25/19 | Time 12:05 ☐ AM ☒ PM |
|---|---|---|
| S. Luke Largess<br>Tin, Fulton, Walker & Owen, PLLC<br>301 East Park Avenue<br>Charlotte, NC 28203 | Signature | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

# USPS Tracking®

FAQs > (https://www.usps.com/faqs/uspstracking-faqs.htm)

Track Another Package +

**Tracking Number:** 70173380000029700649     Remove ✕

Your item was picked up at a postal facility at 5:11 am on March 28, 2019 in CHARLOTTE, NC 28202.

## ✓ Delivered

March 28, 2019 at 5:11 am
Delivered, Individual Picked Up at Postal Facility
CHARLOTTE, NC 28202

Get Updates ∨

Feedback

---

**Text & Email Updates** ∨

---

**Tracking History** ∨

---

**Product Information** ∨

---

See Less ∧

## Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

FAQs (https://www.usps.com/faqs/uspstracking-faqs.htm)

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| COUNTY OF MECKLENBURG | 18-CVS-23578 |

| | |
| --- | --- |
| RUBY DIANNE YOUNG, Executrix of the Estate of LARRY SCOTT YOUNG, Plaintiff, v. CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, Defendant. | COMPLAINT |

NOW COMES the Plaintiff, through counsel and complaining of the Defendant and requesting a jury trial, and alleges the following:

## PARTIES

1. Plaintiff is a citizen and resident of Rowan County. She is the duly appointed Executrix of the Estate of her deceased husband, Larry Scott Young ("Young"). Young was employed by the Defendant Charlotte Mecklenburg Board of Education from May 5, 2016, under August 12, 2016, as head football coach at Independence High School when he was fired as coach under the unlawful circumstances described below.

2. Defendant Charlotte-Mecklenburg Board of Education is a body corporate whose board members are duly elected by the citizens of Mecklenburg County and is charged by state law with control and operation of the public schools in the City of Charlotte and Mecklenburg County known as the Charlotte-Mecklenburg Schools or "CMS". This Defendant shall be referred to as CMS throughout this Complaint.

3. CMS is an "employer" for purposes of the American with Disabilities Act, and had in excess of 10,000 employees at all relevant times.

## JURISDICTION AND VENUE

4. Plaintiff brings this action under the common law of North Carolina and under the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. 12101, *et seq.*

Case 3:19-cv-00201-GCM   Document 1-1   Filed 04/29/19   Page 5 of 12

5. The Superior Court has jurisdiction over this matter under Chapter 7A of the General Statutes and Article IV, § 12(3) of the state constitution and under the ADA.

6. Plaintiff has exhausted all administrative prerequisites to bring his ADA claim. He filed a timely charge of discrimination with the Equal Employment Opportunity Commission, charge number 430-2017-00702, which issued a Notice of Right to Sue on September 28, 2018.

7. Plaintiff's decedent worked for Defendant in Mecklenburg County at all times complained of, so venue is proper in this Court, and the Defendant in a public agency of this county.

## FACTS

8. CMS hired Scott Young on or about May 5, 2016, to be the new head football coach at Independence High School.

9. Independence High School had a storied football history and was a state power for many years under prior coach Tom Knotts.

10. Knotts retired and moved to South Carolina to coach football there.

11. Young was the third coach in four years to try to replace Knotts.

12. Young had been a head coach for 17 years and had an outstanding record, including three state championships and one runner-up finish at West Rowan High School.

13. Young had to step down as coach at West Rowan in April of 2015 because he was diagnosed with a heart ailment and had to undergo open heart surgery to place a left ventricular assistance device or LVAD in his chest to help his heart pump blood.

14. Young was put on a heart transplant list after the surgery and volunteered as an assistant coach at West Rowan during the fall of 2015 to see how he did with the LVAD. One of his former assistant coaches was named the head coach.

15. After that season, Young's heart doctors cleared him to return to coaching while on the LVAD. Young did not want to displace his former assistant at West Rowan, so he applied in the spring of 2016 for the coaching vacancy at Independence High School.

16. Young was hired at Independence as the head coach and as a physical education teacher.

17. Though his coaching contract did not begin officially until June 29, 2016, nearly two months before his teaching duties began, he immediately went to spring workouts with the players in May of 2016.

18. The media ran stories that he was Independence's new coach on May 6, 2016,

noting he had won three state championships at West Rowan.

19. On May 17, 2016, another story reported that Young "wasted no time" getting to work with the team, showing pictures from spring practice.

20. But the players' parents expressed immediate concerns about Young's health.

21. On May 5, 2016, the day before the public announcement but after the players and parents knew Young was the new coach, a parent sent an email to the athletic director asking how the school could hire someone who had resigned from his prior job for health reasons.

22. The Athletic Director forwarded the email to Young to alert him.

23. At a "meet the coach" event for parents and player a week later, a parent stood up and asked if Young was healthy enough to coach. He said he was fine with the device, but might need a six to eight week leave if a heart became available for a transplant.

24. Young then learned a few days before the end of spring practice that a matching donor heart was available and he underwent a heart transplant on May 28, 2016.

25. Young spent 49 days in intensive care due to surgery complications, but was away from Independence High School for seven weeks, just as he explained.

26. Young had a coaching staff of six, most of them carryovers from the prior year, who worked with the players in his absence. They had been reporting to him since mid-June about the team's progress. None of the few new assistant coaches were from West Rowan, as some parents believed.

27. Young returned on July 15, 2016, weak but able to attend some 7 on 7 scrimmages that were scheduled with other schools. He watched from the sidelines in a wheelchair.

28. Young's son was one of the candidates for quarterback. Young commented on the sidelines at the scrimmage that he believed that another athlete playing quarterback at that moment would be better as a receiver.

29. Word of the comment got to the player and his parents and they assailed Young, first at the scrimmage and then at the parking lot of the high school, where Young asked to meet with the player and explain why he thought he was more skilled to be a receiver. The player pushed his helmet through the car window into Young's chest and said he was "done." He quit the team.

30. The boy's parent then wrote to the school and central office, complaining that Young was ineffective as a coach as he had been absent for months for his health issues, and challenged the way he handled himself at the scrimmage regarding their son.

31. Plaintiff and Young met with the Independence High School principal to discuss the letter from the parents.

32. Young then met with the school principal and the athletic director to discuss further the complaint from the parents of the student who quit the team. The family had threatened to get a lawyer. The principal mentioned that other parents had complained about his health and asked Young if he felt physically fit to coach.

33. Young assured him that he was. The principal told Young that he had his support and would put to rest the concerns of the disgruntled parents of the player who quit.

34. Official practices started on August 1, 2016, and Young attended them. He used a motorized cart to move around the field and a cane for support when he walked.

35. Many parents watched these practices and the complaints about Young's health grew.

36. Young scheduled a meeting with the parents and players for August 7, 2016, to discuss the upcoming season and review the rules for participation.

37. The principal and athletic director worked with Young to have prepared remarks for the parents, including comments about his health. Young stuck to the agenda and the suggested remarks. He explained that he had been released by his cardiologist to and was able to coach full time.

38. When he finished, there were questions from the audience. Some parents complained about Young's emphasis on a running game and challenged the team philosophy.

39. The former Pee Wee football coach of the player who had quit the team attended the meeting. He angrily challenged the parents in the room for not taking up for the player who had quit rather than play receiver.

40. The principal intervened and closed the meeting. About a dozen parents approached Young after the meeting and apologized for the complaints.

41. Sadly, Young then learned that his father had died during the meeting. Plaintiff told Young the news after the meeting as they drove home.

42. Young missed practice the next day to be with his mother and to help make funeral arrangements. He left specific practice plans for the coaches. He was at practice the rest of the week.

43. Some of the parents met privately with the principal that week and demanded that Young be removed as the coach. The athletic director who had recommended Plaintiff's hiring did not know of these meetings and was purposely left out of them.

44. On information and belief, one of the complaints expressly stated in this meeting was that Young had missed too much of the summer due to his heart transplant, and was still not fit to coach the team.

45. In fact, Young was fully capable of coaching the team.

46. That Friday, August 12, 2016, in the morning, prior to a meeting with the players to distribute booster club coupon books, the principal called Young into a meeting with the CMS area superintendent and terminated him as head football coach, a week before the first game of the season.

47. The principal stated that Young could stay on as a physical education teacher, but if he did he could not have *any* contact with any students in the football program. Given that he was hired to teach weightlifting, that demand was impossible to meet.

48. The principal would not give Young a reason for the termination, simply repeating that it was his decision.

49. Young was fired, at least in part, because of the parental complaints about hiring him as a coach with health problems, his absence that summer due to the heart transplant, and his weakened physical condition at the time he was fired.

50. The student who had quit the team rejoined it immediately but, ironically, did not get starting quarterback position under the new coach.

51. Another parent who had complained about the hiring of Young and moved his son over to another school was on campus the day Young was fired. The son transferred back before the season started.

52. Young's termination and short tenure were publicized in the press.

53. Young looked for another position and moved his family to Iredell County and took a role as an assistant coach at a high school there.

54. The Independence High football program has been in shambles since the firing.

55. Young applied for numerous head coaching positions across the state.

56. His termination a week before the season just after heart surgery became a black mark on Young. He could only get two interviews, despite having one of the best coaching records in the state.

57. Young was unable to find another coaching job. He suffered greatly from the humiliation of losing the position of head coach that defined his life. He also lost the coaching stipend from Independence High when he was fired. He also lost the teaching salary when he moved to another county to coach football.

58. Young's health strengthened and he was able to travel and live normally other than not being a head football coach.

59. But Young then suffered an unexpected immune system complication in October 2017 when he caught a cold. According to his heart specialist, his body rejected his transplanted heart and he died from a cardio-pulmonary arrest in the middle of the night.

## FIRST CLAIM FOR RELIEF
(Wrongful Discharge)

60. All prior paragraphs are incorporated by reference.

61. Young was terminated as head coach, at least in part, due to his disabling medical condition.

62. Defendant offered no justification for the termination as coach, lamely stating that he was not removed from his teaching duties. He was under contract to teach and CMS had no legal basis to revoke that teaching contract.

63. The North Carolina Legislature has declared in the North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.2, that:

> (a) It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of...handicap by employers which regularly employ 15 or more employees.

> (b) It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

64. Defendant's actions in terminating Young on account of his disability/handicap directly violated this express public policy of the State of North Carolina. Thus, the termination of Plaintiff was wrongful and unlawful.

65. As a result of that wrongful discharge, Young has suffered loss of income as well as utter professional humiliation, emotional distress and the end of his coaching career. Plaintiff seeks and is entitled to compensatory tort damages as Executrix of the Estate.

## SECOND CLAIM FOR RELIEF
(Americans with Disabilities Act 42 U.S.C. § 12101, *et seq.*)

66. Plaintiff incorporates all prior paragraphs by reference.

67. Defendant is an "employer" under 42 U.S.C. 42 U.S.C. § 12111(5)(A).

68. Young was an "employee" under 42 U.S.C. 42 U.S.C. § 12111(5)(A) and a "qualified individual" with a disability under 42 U.S.C. 12111 (8). His heart transplant clearly impacted basic life functions, including blood circulation and breathing, as well as working, walking, driving, and sleeping.

69. CMS gave no reasons for his termination. Firing him, at least in part, because of his heart condition was not a legitimate business justification for his dismissal.

70. In terminating Young rather than continue to employ him with his disability, Defendant discriminated against Young on account of his disabling condition in violation of 42 U.S.C. § 12112(a) and § 12112(b)(5)(B).

71. As a direct result of his termination, Young suffered lost earnings and benefits as well as emotional distress and humiliation in losing his coaching career.

72. Plaintiff seeks and is entitled to actual damages pursuant to 42 U.S.C. § 2000e-5(g)(1).

73. Plaintiff seeks and is entitled to compensatory damages under 42 U.S.C. § 1981a(a)(2).

74. Plaintiff also seeks reasonable attorneys' fees under 42 U.S.C. § 12205.

## JURY DEMAND

75. Plaintiff demands that all matters be tried before a jury of her peers.

## PRAYER FOR RELIEF

Upon the trial of this matter, Plaintiff prays that the Court enter Judgment for him and award the following relief:

a. Compensatory damages;

b. The costs of this action, including reasonable attorney's fees under 42 U.S.C. § 12205;

d. Interest on the judgment at the statutory rate; and,

e. Any further the relief the Court deems just and necessary.

Respectfully submitted this the 21st day of December, 2018.

*signature*

S. Luke Largess (N.C. Bar #17486)
TIN, FULTON, WALKER & OWEN, P.L.L.C.
301 East Park Avenue
Charlotte, NC 28203
Tel.: 704-338-1220
Fax: 704-338-1312
llargess@tinfulton.com


*Attorney for the Plaintiff*