IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:19-cv-201

RUBY DIANNE YOUNG, Executrix of the Estate of LARRY SCOTT YOUNG,

Plaintiff,

v.

CHARLOTTE-MECKLENBURG BOARD OF EDUCATION,
EILEEN SHORT, individually, and
DAVID SHORT, individually,

Defendants.

**AMENDED COMPLAINT**

NOW COMES the Plaintiff, through counsel and complaining of the Defendants and requesting a jury trial, and alleges the following:

**PARTIES**

1. Plaintiff is a citizen and resident of Rowan County. She is the duly appointed Executrix of the Estate of her deceased husband, Larry Scott Young ("Young"). Young was employed by the Defendant Charlotte Mecklenburg Board of Education from May 5, 2016, under August 12, 2016, as head football coach at Independence High School when he was fired as coach under the unlawful circumstances described below.

2. Defendant Charlotte-Mecklenburg Board of Education is a body corporate whose board members are duly elected by the citizens of Mecklenburg County and is charged by state law with control and operation of the public schools in the City of Charlotte and Mecklenburg County known as the Charlotte-Mecklenburg Schools or "CMS". This Defendant shall be referred to as CMS throughout this Complaint.

3. CMS is an "employer" for purposes of the American with Disabilities Act, and had in excess of 10,000 employees at all relevant times.

4. Upon information and belief, Defendant Eileen Short is a citizen and resident of Mecklenburg County, North Carolina.

5. Upon information and belief, Defendant David Short is a citizen and resident of Mecklenburg County, North Carolina.

## JURISDICTION AND VENUE

6. Plaintiff brings this action under the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. 12101, *et seq*., against the Defendant "CMS" and under the common law of North Carolina against the Defendant's Eileen and David Short.

7. Plaintiff has exhausted all administrative prerequisites to bring his ADA claim. He filed a timely charge of discrimination with the Equal Employment Opportunity Commission, charge number 430-2017-00702, and received a Notice of Right to Sue on or about October 1, 2018.

8. The Court has supplemental jurisdiction over the state claim, which as it is so closely related to the ADA claim that it is part of the same case or controversy.

9. Plaintiff's decedent worked for Defendant in Mecklenburg County at all times complained of, and all complained of acts occurred in this County, so venue is proper in this Court.

## FACTS

10. CMS hired Scott Young on May 5, 2016, to be the new head football coach at Independence High School.

11. Independence then had a storied football history and was a state power for many years under Tom Knotts.

12. Knotts retired and moved to coach football at a high school in South Carolina.

13. Young was the third coach in four years to try to replace him.

14. Young had been a head coach for 17 years and had an outstanding record.

15. Young had had won three state championships and one runner-up finish at West Rowan High School, but had to step down as coach in April of 2015 because he had to undergo open heart surgery to place a left ventricular assistance device or LVAD in his chest to help his heart pump blood.

16. Young was put on a transplant list and volunteered as an assistant coach at West Rowan during the fall of 2015 to see how he did with the LVAD.

17. Young's heart doctors cleared him to coach using the LVAD. He did not want to

displace the head coach at West Rowan, one of his former assistants, so he applied in the spring of 2016 for the job at Independence High.

18. Young was hired with some fanfare and immediately went to work in May of 2016.

19. The media ran stories that he was Independence's new coach on May 6, 2016, noting he had won three state championships at West Rowan.

20. On May 17, 2016, another story reported that Young "wasted no time" getting to work with the team, showing pictures from spring practice.

21. Young's official coaching contract began June 29, 2016, nearly two months before his teaching duties began.

22. Concern about Young's health was an immediate issue among the players' parents.

23. On May 5, 2016, the day before the public announcement, a parent sent an email to the athletic director asking how the school could hire someone who had resigned from his prior job for health reasons.

24. The Athletic Director forwarded the email to Young to alert him.

25. At a "meet the coach" event for parents and player a week later, a parent stood up and asked if Young was healthy enough to coach. He said he was, but might need a six to eight week leave for a transplant.

26. Young learned that a donor heart became available a few days before the end of spring practice and he underwent a heart transplant on May 28, 2016.

27. Young spent 49 days in intensive care due to complications, but was away from Independence for seven weeks.

28. Young had a coaching staff of six who worked with the players in his absence and had been reporting to him since mid-June.

29. He came back on July 15, 2016, weak but able to attend some 7 on 7 scrimmages that were scheduled with other schools. He watched from the sidelines in a wheelchair.

30. Young's son was one of the candidates for quarterback. Young commented on the sidelines at the scrimmage that the person playing quarterback at that moment would be better as a receiver. That person is the son of Defendants Short.

31. Word of the comment got to the player and his parents and they assailed Young, first at the scrimmage and then at the parking lot of the high school, where Young asked to meet

with the player and explain why he thought he was more skilled to be a receiver. In the parking lot, the player pushed his helmet through the car window into Young's chest and said he was "done." He quit the team.

32. Defendants Short then wrote to the school and central office, complaining that Young was ineffective as a coach, specifically because he had been absent for months for his health issues, and challenged the way he handled himself at the scrimmage.

33. Plaintiff and Young met with the principal to discuss the letter from the parents.

34. Young then met with the school principal and the athletic direct to discuss further the complaint from Defendants Short. The family had threatened to get a lawyer. The principal mentioned that other parents had complained about his health and asked Young if he felt physically fit to coach.

35. Young assured him that he was. The principal told Young that he had his support and would put to rest the concerns of Defendants Short.

36. Official practices started on August 1, 2016, and Young attended them. He used a motorized cart to move to and from and around the field, and a cane for support.

37. Many parents watched these practices and the Short parents' complaints about Young's health grew among other parents.

38. Young scheduled a meeting with the parents and players for August 7, 2016, to discuss the upcoming season and review the rules for participation.

39. The principal and athletic director worked with Young to have prepared remarks for the parents, including comments on his health. Young stuck to the agenda and the suggested remarks. He explained that he had been released by his cardiologist to be able to coach full time.

40. When he finished, there were questions from the audience. Some parents complained about Young's emphasis on a running game and challenged the team philosophy.

41. The former Pee Wee football coach of the Short's son attended the meeting. He challenged the other parents in the room for not taking up for Short's son who had quit rather than play receiver.

42. The principal intervened and closed the meeting. About a dozen parents approached Young after the meeting and apologized for the complaints.

43. Sadly, Young's father had died during the meeting. Plaintiff received word and told Young after the meeting when they got in the car.

44. Young missed practice the next day to be with his mother and help make funeral

arrangements. He left specific practice plans for the coaches. He was at practice the rest of the week.

45. Some of the parents, including on information and belief the Short parents, met privately with the principal that week and demanded that Young be removed as the coach. The athletic director did not know of these meetings

46. On information and belief, among the complaints expressly stated in this meeting was that Young had missed too much of the summer due to his heart transplant, and was still not fit to coach the team.

47. In fact, Young was fully capable physically of coaching the team.

48. That Friday, August 12, 2016, in the morning, prior to a meeting with the players to distribute booster club coupon books, the principal called Young into a meeting with the CMS area superintendent and terminated him as head football coach, a week before the first game of the season.

49. The principal stated that Young could stay on as a teacher, but he could not have any contact with any players in the football program.

50. The principal would not give Young a reason, simply repeating that it was his decision.

51. Young was fired because of the parental complaints about hiring him as a coach with health problems, his absence that summer due to the heart transplant, and his weakened physical condition at the time he was fired.

52. The Defendant Short's son rejoined the team, but was not made the starting quarterback under the new coach.

53. Another student who had transferred in the spring and whose parent had complained about the hiring of Young, came back to the school. His father was on campus the day Young was fired.

54. His termination and short tenure were publicized in the press.

55. Young moved his family to Iredell County and took a position as an assistant coach at a high school there.

56. The Independence High football program has been in shambles since the firing.

57. Young applied for numerous head coaching positions across the state.

58. His termination a week before the season just after heart surgery became a black mark on Young. He could only get two coaching interviews, despite having one of the best

coaching records in the state.

59. Young was unable to find another coaching job. He suffered greatly from the humiliation of losing his career. And he lost the coaching stipend from Independence High.

60. Young's health strengthened and he was able to live normally, other than being a head football coach.

61. But Young then suffered immune system complications in October 2017 when he caught a cold. His body had begun to reject his transplanted heart and he died from a cardio-pulmonary arrest in the middle of the night.

### FIRST CLAIM FOR RELIEF
(Americans with Disabilities Act 42 U.S.C. § 12101, *et seq.*)

62. Plaintiff incorporates all prior paragraphs by reference.

63. Defendant is an "employer" under 42 U.S.C. 42 U.S.C. § 12111(5)(A).

64. Young was an "employee" under 42 U.S.C. 42 U.S.C. § 12111(5)(A) and a "qualified individual" with a disability under 42 U.S.C. 12111 (8). His heart transplant clearly impacted basic life functions, including blood circulation and breathing, as well as working, walking, driving, and sleeping.

65. CMS gave no reasons for his termination. Firing him because of his heart condition was not a legitimate business justification for his dismissal.

66. In terminating Young rather than continue to employ him with his disability, Defendant discriminated against Young on account of his disabling condition in violation of 42 U.S.C. § 12112(a) and § 12112(b)(5)(B).

67. As a direct result of his termination, Young suffered lost earnings and benefits as well as emotional distress and humiliation in losing his coaching career.

68. Plaintiff seeks and is entitled to backpay pursuant to 42 U.S.C. § 2000e-5(g)(1).

69. Plaintiff seeks and is entitled to compensatory damages under 42 U.S.C. § 1981a(a)(2).

70. Plaintiff also seeks reasonable attorneys' fees under 42 U.S.C. § 12205.

### SECOND CLAIM FOR RELIEF
(Tortious Interference with Contract)

71. Plaintiff incorporates all prior paragraphs by reference.

72. Young's employment with CMS as coach was a contractual relationship under North Caroline common law.

73. Defendants Short were outsiders to that contractual relationship between Young and CMS and knew of the contract.

74. The Shorts interfered in Young's contract by demanding that he be terminated as the football coach because of Young's disability and because of their son's playing prospects under Young, and CMS capitulated.

75. The Shorts' interference in Young's employment as coach was based on actual and legal malice toward Young, demanding his termination as coach in explicit anger at his disability and his view that their son would be better at another position lacked any legal justification.

76. As a result of the Shorts' intentional interference with Young's employment as coach, Young lost his coaching career and suffered lost wages and benefits, both past and future, as well as compensable emotional harm.

77. Plaintiff seeks and is entitled to actual and compensatory damages from the Young's for the compensable harms caused by the Shorts' intentional interference in Young's employment with CMS.

## JURY DEMAND

78. Plaintiff demands that all matters be tried before a jury of her peers.

## PRAYER FOR RELIEF

Upon the trial of this matter, Plaintiff prays that the Court enter Judgment for him and award the following relief:

a. Actual and Compensatory damages in excess of $25,000;

b. The costs of this action, including reasonable attorney's fees under 42 U.S.C. § 12205;

d. Interest on the judgment at the statutory rate; and,

e. Any further the relief the Court deems just and necessary.

Respectfully submitted this the 16th day of September, 2019, *nunc pro tunc,* August 12, 2019.

**/s/ S. Luke Largess**
S. Luke Largess (N.C. Bar #17486)
TIN, FULTON, WALKER & OWEN, P.L.L.C.
301 East Park Avenue
Charlotte, NC  28203
Tel.:    704-338-1220
Fax:    704-338-1312
llargess@tinfulton.com

*Attorney for the Plaintiff*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was this day served upon CMS by filing in the ECF system.  Plaintiff will seek a summons for service on the Defendants Short.

This the 16th day of September, 2019.

**/s/ S. Luke Largess**

S. Luke Largess